UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MERRY-JEANNE KNOTTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:04-CV-535 PS |
| | ) | |
| SCHOOL CITY OF EAST CHICAGO and THE SCHOOL BOARD OF TRUSTEES OF THE SCHOOL CITY OF EAST CHICAGO | ) ) ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff brought this lawsuit against her former employers Defendants School City of East Chicago and its Board of Trustees, alleging age discrimination under the Age Discrimination in Employment Act ("ADEA") and reverse race discrimination under Title VII. Defendants have now moved for summary judgment on both claims. Because Plaintiff has shown that there are issues of material fact, Defendants' Motion for Summary Judgment is denied.

**I. FACTUAL BACKGROUND**

On July 23, 2002, Plaintiff Merry-Jeanne Knotts received an offer from the Board of School Trustees of the School City of East Chicago (Board of School Trustees) to work as a special education teacher at Field Elementary School in East Chicago for the school year 2002-2003. (7/23/02 G. Manous Letter, Def. Ex. 1.) According to Plaintiff's contract, her term of employment began on August 26, 2002 and ended on June 13, 2003. (Knotts' Contract, Def. Ex. 2.)

On April 10, 2003, Plaintiff sent a letter to the Human Resources department for School City of East Chicago (School City), stating her expectation to qualify for a higher salary in the 2003-2004 school year.  (4/10/03 M. Knotts Letter, Def. Ex. 5.)  The letter also listed her plan to complete credit hours that would place her in a Master's degree plus 30 hours category and fulfill the course requirements for her Special Education licensing.  (*Id.*)

According to Defendants, around May 1 of each school year, all first and second year teachers receive notice that they will not retain their position for the following year due to a reduction in force (RIF).  (6/23/06 E. Martinez Aff. ¶¶ 1-2, Def. Ex. 6.)  Therefore, at the end of any given school year, those teachers are no longer active employees of School City.  (*Id.* at ¶ 2.)  On April 28, 2003, Superintendent Flores of School City informed Plaintiff that the Board of School Trustees voted not to renew her contract as a non-permanent teacher.  (4/28/03 J. Flores Letter, Def. Ex. 8.)  Plaintiff therefore received notice that she was part of a RIF in place for the school year ending in 2003.  (Knotts Dep. at 59, Def. Ex. 7.)  She was over 40 years old at the time.  (Req. for Admission Resp. No. 2, Pl. Ex. 12.)  Plaintiff subsequently requested reasons for the non-renewal of her teaching contract.  (5/9/03 Knotts Letter, Def. Ex. 10.)  The Superintendent responded, by stating: "The justification is based on the following: 1) the lack of financial resources, and 2) a reduction in staff.  Rising utility costs and salary demands are also factors.  These have compelled us to reduce our workforce."  (5/22/03 J. Flores Letter, Def. Ex. 11.)

Defendants claim that both African-American and white teachers were subject to the RIF in 2003 and not re-hired afterwards.  (6/28/06 E. Martinez Aff. ¶¶ 1, 3, Def. Ex. 4.)  They further assert that teachers both above and below the age of forty were subject to the RIF and not re-

2

hired.  (*Id.* at ¶¶ 2, 4.)

On May 5, 2003, Plaintiff sent a letter to Thelma Morris, the principal of Field Elementary School, informing her that, due to a medical emergency, Plaintiff would be unable to work after May 9.  (5/5/03 Knotts Letter, Def. Ex. 9.)  Plaintiff expressed her intention to return to Field School for the 2003-2004 school year.  (*Id.*)  She also told the principal how much she enjoyed her position at Field School.  She stated:

> Thank you for your kindness and all of the support you have given me.  I have enjoyed working with you, the students, the parents, the staff, the technology team, and all the wonderful people in the Special Education Department.  Teaching and learning in East Chicago has been a very rewarding experience for me.

(*Id.*)

According to Defendants, after June 1 of each school year, School City performs a "tentative needs assessment," and some positions subject to the RIF may be reinstated.  (6/23/06 E. Martinez Aff. ¶ 3.)  These positions are posted for one week for which only *active* teachers may apply.  (*Id.* at ¶ 4.)  After that one week finishes, any remaining open positions are filled by hiring outside candidates.  (*Id.* at ¶ 5.)  It is only at this time that any teacher subject to the RIF may apply to the open position by either submitting a resume or letter of interest to School City's human resources office.  (*Id.*)

There is, however, some discrepancy whether this application process (of submitting a resume or letter of interest) for former teachers in Plaintiff's shoes was a requirement.  As noted by Plaintiff, Ted Kounelis, the then-Director of Human Resources, provided the following testimony:

> Q:  Focusing back on summer of 2003 timeframe when you were still the director of HR, was it a requirement that each

3

>                  teacher who completed one year had to reapply for a
>                  teaching position.
>
> A:      I don't know if it was that much of a requirement other
>         than the fact that . . . principals would get letters . . . from
>         us stating any problems with any persons that you were
>         having . . . give us your recommendations of not returning
>         or returning, and those kind of letters we got.  It wasn't a
>         formal application process for the same position.

(T. Kounelis Dep. at 20-21, Pl. Ex. 7.)

On June 17, 2003, School City posted six vacancies for special education teaching positions, with two positions available at Field School.  (6/17/03 Bulletin, Def. Ex. 13.)  According to the announcement, only contracted (that is, active) East Chicago employees could apply for those positions until June 23, 2003.  (*Id.*)  After June 23, the job postings were opened to the public.  (6/23/06 E. Martinez Aff. ¶ 5.)

Defendants claim that Plaintiff never submitted a letter of interest, resume or application to Human Resources for any open 2003-2004 School City position.  (*Id.*)  Plaintiff, however, claims that she placed several calls to various School City personnel from June through September 2003.[1]  (Phone Log, Def. Ex. 17.)  Irene Rivera, Assistant Director of Special Education, admits that she spoke to Plaintiff during the summer of 2003 because Plaintiff was "concerned about receiving that [RIF] letter." (I. Rivera Dep. at 15, Pl. Ex. 14.)  Rivera explained that the RIF letters were Board policy, but that any other questions needed to be directed to Human Resources.  (*Id.* at 15-16.)  Ted Kounelis, Director of Human Resources, does

---

[1] Plaintiff provides the substance of these conversations in her Response.  (Pl. Resp. at 4-6.)  But she failed to provide an affidavit supporting her contentions.  It appears that her counsel, although listing the affidavit in her Designation of Exhibits [DE 29 at 1] and citing to it in the Response, simply failed to include the affidavit with the exhibits.  Thus, the Court has no choice but to disregard Plaintiff's assertions supported by the missing affidavit.

not remember whether he spoke to Plaintiff. (T. Kounelis Dep. at 15-17.)

Furthermore, Plaintiff claims that she did, in fact, submit a letter of interest. She states that her May 5, 2003 letter to Principal Morris, which stated that she would be "ready to return to Field School for the 2003-2004 school year," was copied to Ted Kounelis (in HR) and Connie Manous (in special education). (Pl. Resp. at 3; 5/5/03 M. Knotts Letter; T. Kounelis Dep. at 9, 21.)

The two special education positions at Field School were not filled by any current, active teachers. Consequently, School City hired Robin Carter, a 33-year old African-American woman on August 22, 2003 for the 2003-2004 school year. (R. Carter Application, Def. Ex. 14; 8/22/03 T. Kounelis Letter, Def. Ex. 15; Req. for Admission Resp. No. 4, Pl. Ex. 12.) Carter had received a Bachelor of Science degree with a major in Business and a minor in Accounting from Indiana University in 1995. (R. Carter Application.) When she applied for the teaching position at School City, she was attending Indiana University for a special education certificate/Master degree to be received in December 2003. (*Id.*) She did not have any teaching experience at that time, other than college field teaching for two spring terms in English and special education, and experience as a substitute/special education teacher in the Hammond Public Schools in 2002. (*Id.*; Ind. Dep't Ed. Teaching Inquiry for R. Carter, Pl. Ex. 11.) She also did not have any Indiana licenses or certificates for teaching when she applied. (R. Carter Application.)

The second special education position was filled by Te'cha Hardrick who had a Bachelor's Degree. (I. Rivera Dep. at 24; Ind. Dep't Ed. Teaching Inquiry for T. Hardrick, Pl. Ex. 13.) She did not have any teaching experience or any teaching licenses when she applied for the position. (Ind. Dep't Ed. Teaching Inquiry for T. Hardrick.) Rivera testified that Hardrick

5

was a minority.  (I. Rivera Dep. at 24.)

In contrast to Carter's and Hardrick's qualifications, Plaintiff had extensive teaching experience.  She had a Master's degree (presumably in Education), and spent nearly thirty years teaching kindergarten.  (Teacher's License, Pl. Ex. 15; Verification of Teaching Experience, Pl. Ex. 24.)  She had received a lifetime Teacher's License from the Indiana Department of Public Instruction in 1989.  (Teacher's License, Pl. Ex. 15; Ind. Dep't of Ed. Teaching Inquiry for M. Knotts, Pl. Ex. 25.)  Plaintiff also was enrolled in classes at Indiana University Northwest during the 2002-2003 year that, upon completion, would give her a special education minor in Mild Disabilities.  (7/28/03 C. Cate-Clements Mem., Pl. Ex. 16; 4/10/03 M. Knotts Letter, Def. Ex. 5.)  She had informed School City that she was in the process of earning these new credentials in April 2003.  (4/10/03 M. Knotts Letter.)  In August 2003, Plaintiff completed the appropriate coursework, and was recommended for the Mild Disabilities Minor, which she received.  (9/25/03 C. Cate-Clements Mem., Pl. Ex. 18; Ind. Dep't of Ed. Teaching Inquiry for M. Knotts.)

Furthermore, Plaintiff received primarily positive reviews regarding her teaching ability.  Plaintiff's evaluation in November 2002 reflected predominantly "good" marks with only two in the "satisfactory" category.  (Indiv. Visit Eval., Pl. Ex. 22.)  Principal Morris noted that Plaintiff was "very creative, hard worker and [had] good ideas" but needed to be "more flexible with students, subs, and staff."  (*Id.*)  During a field evaluation by another rater on April 4, 2003, Plaintiff received all "excellent" marks and only positive comments.  (Field Eval., Pl. Ex. 23.)  Finally, in a letter dated August 10, 2003, Principal Morris described Plaintiff as a "very knowledgeable and highly creative educator."  (8/10/03 T. Morris Letter. Pl. Ex. 17.)  She continued:

6

> [Mrs. Knotts] follows the rules and works hard to reach her goals. She comes early in the morning and leaves late in the evening – working every minute. Mrs. Knotts is an asset to any elementary school program.

(*Id.*)  School City did not present any evidence to the contrary.

## II.  DISCUSSION

**A.     Motion to Strike**

Defendant School City filed a Motion to Strike Plaintiff's Response because she filed it over a week late without leave from the Court or opposing counsel.  Plaintiff submitted a Declaration of Inability to File in a Timely Manner [DE 33] when she filed her Response, asserting that illness and technological problems prevented her counsel from a timely filing.  The Court is willing to give Plaintiff the benefit of the doubt in this instance and will deny the Motion to Strike.  But Plaintiff is forewarned that any further delay without approval from the Court or notice to opposing counsel will not be countenanced and may result in striking a pleading or sanctions.

**B.     Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In making this determination, a court construes "all facts and reasonable inferences from the record in the light most favorable to [ ] the non-moving party."  *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

**C.      Title VII and ADEA Claims**

Under the ADEA, it is an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual" who is age 40 or older.  29 U.S.C. §§ 623(a)(1), 631(a).  Similarly, Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).

To prevail on age and race discrimination claims, such as the ones presented here, a plaintiff must establish that she is the victim of intentional discrimination.  *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999).  She may establish discrimination through either the "direct" or "indirect" method of proof.  *Id.*  In this case, it is undisputed that Plaintiff Knotts has no direct evidence of discrimination.

Instead, the Court will analyze her claims under the "indirect" method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Plaintiff here is essentially arguing that the School City failed to re-hire her for the two open vacancies at Field School and instead replaced her with a younger, African-American woman.  (Pl. Resp. at 16.) To defeat a motion for summary judgment in the failure-to-hire context arising under the indirect method, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) she was a member of a protected class; (2) she was qualified for an open position for which she applied; (3) her application for employment was rejected; and (4) the employer filled the position with someone not in the protected class, or left the position open.  *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005).

8

If a plaintiff establishes a *prima facie* case, then the burden shifts to the employer to present evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876 (7th Cir. 2002). If such reason is supplied, then the employee must show that the stated reason is merely a pretext for unlawful discrimination. *Id.* Or in other words, "an employer's decision to hire is pretextual when it is a lie – a phony reason meant to cover up a disallowed reason." *Blise*, 409 F.3d at 867. It is not enough for a plaintiff to show that the decision to hire someone else is "mistaken, ill-considered, or foolish, [as long as] the employer honestly believed those reasons[.]" *Id.* (citations and alterations in original omitted); *see also Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000) (defining pretext as a "phony reason" and not merely an error or poor business judgment).

### 1. *Prima Facie* Case for Plaintiff's ADEA Claim

Plaintiff Knotts has raised questions of material fact in her *prima facie* case for her ADEA claim. It is undisputed that she is a member of a protected class – she is over forty years old. Moreover, she is well qualified for the two open special education positions based on her experience, her education/licensing and the generally positive reviews she received from School City in the prior year. But it is unclear whether she applied for the position. School City states that a teacher in Plaintiff's position could have applied for a job only by either submitting a resume or letter of interest to School City's human resources office at the end of June 2003 for the following year. According to School City, there is no resume or letter of interest on file reflecting Plaintiff's interest in a teaching position for 2003-2004. Plaintiff, however, claims that she did apply, at the very least, through her letter in which she told the principal of Field School

9

that she would like to return there for the following year.  She also made several phone calls to School City's Human Resources department over the summer of 2003.  The Court does not have any evidence before it regarding the substance of the phone calls.  Nevertheless, Rivera testified in her deposition that Plaintiff called her to discuss Plaintiff's concerns about the RIF letter, presumably because Plaintiff wished to ensure her return to Field School.  Rivera told Plaintiff that the letters were Board policy and that any other questions needed to be directed to Human Resources.

There is also a dispute whether submission of a resume or letter of interest is even needed of someone in Plaintiff's position.  School City, via an affidavit submitted by Elaine Martinez, the current HR Director for School City, stated that such an action is a requirement.  (*See* 6/23/06 E. Martinez Aff. ¶ 5.)  On the other hand, Ted Kounelis, the then-HR Director, stated in his deposition that there wasn't a "formal application process for the same position" for teachers who had completed one year at School City.  (T. Kounelis Dep. at 20-21.)  He mentioned only that the HR department would send letters seeking principals' recommendations regarding which teachers should return to their positions and which should leave.  (*Id.*)  From the evidence presented to the Court, it is apparent that Principal Morris would have recommended that Plaintiff remain in her special education teaching position at Field School.

Next, Plaintiff has shown that her application, if there was one, was rejected as she did not receive a teaching position at School City.  Finally, School City admits that it hired a younger woman (not a member of the protected class) to fill Plaintiff's position.

Based on the *McDonnell Douglas* analysis, the Court finds that there are questions of material fact, namely:  (1) Did Plaintiff apply for her previously-held position? and (2) What was

10

the application process for a non-active teacher, like Knotts, who was re-applying for a position for the following school year? Accordingly, Plaintiff's age discrimination claim survives summary judgment.

Defendants, in their Motion, rely on the wrong *McDonnell Douglas* analysis. They look at this case as a RIF case, and therefore apply the test in that context. (Def. Mem. at 7.) In a RIF case, a plaintiff must prove that (1) she is a member of the protected class; (2) she was performing at a level that met her employer's legitimate expectations; (3) she was subject to an adverse employment action; and (4) she was treated differently than a similarly situated person outside her protected class. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). School City argues that Plaintiff cannot fulfill the fourth prong – there are no comparable individuals outside her protected class that were treated better. Defendants are correct, but it doesn't matter. The proper way to view this case is as a failure-to-hire case, not as a RIF case. *See Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331 (7th Cir. 1995) (noting that "failure-to-hire" cases are different than "termination" and RIF cases). Plaintiff here either satisfies or provides contested facts for each *McDonnell Douglas* prong in that context.

### 2.     *Prima Facie* Case for Plaintiff's Title VII Claim

Plaintiff claims that she suffered reverse race discrimination when School City failed to re-hire her for the special education teaching position.[2] (Pl. Resp. at 17.) When analyzing reverse discrimination allegations, the Court must find that a plaintiff, along with meeting the second, third, and fourth prongs of the *McDonnell Douglas* test, must also show that

---

[2] The Court was unable to find affirmative proof that Plaintiff is white in her submitted evidence. But Defendant has not contested that fact. Accordingly, the Court now presumes that Plaintiff is white and will perform the reverse race discrimination analysis.

"background circumstances exist to show an inference that the employer has reason or inclination to discriminate invidiously against whites or evidence that there is something fishy about the facts at hand." *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (internal quotations and citations omitted). Some examples of circumstances that would support such an inference include evidence showing: (1) schemes to fix performance ratings to a plaintiff's detriment; (2) that the hiring system seemed rigged against a plaintiff because it departed from the usual procedures in an unprecedented fashion; or (3) that a plaintiff was passed over despite superior qualifications or that the person ultimately hired was clearly less qualified than the plaintiff. *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 455 (7th Cir. 1999) (citing *Harding v. Gray*, 9 F.3d 150, 153-54 (D.C. Cir. 1993) and *Duffy v. Wolle*, 123 F.3d 1026, 1036-37 (8th Cir. 1997)).

Here, Plaintiff submits uncontroverted evidence that she was more qualified than Robin Carter when School City hired Carter for the special education position at Field School. Plaintiff spent many years teaching kindergarten, held a Master's degree, had a lifetime teaching license along with a special education license, which she earned in August 2003, and had already performed favorably for School City. Carter, on the other hand, had never held a full-time teaching position, had received a Bachelor's degree in business (a non-education field), and was not yet licensed. These facts demonstrate that Plaintiff was vastly more qualified than Carter. Furthermore, Defendants have not provided any evidence showing that School City was displeased with Plaintiff's performance. To the contrary, the evidence reflects that the principal of Field School was happy with Plaintiff's teaching ability. Plaintiff's education, teaching experience/licensing, and prior job performance all indicate that she was the superior candidate

for the open special education position.

Therefore, we conclude that sufficient "background circumstances" exist to allow Plaintiff to satisfy the threshold question of the *prima facie* case for reverse race discrimination. Furthermore, the Court's analysis of the *McDonnell Douglas* factors laid out in the above section applies here as well. Accordingly, this claim also survives summary judgment.

### 3. Pretext

School City attempts to provide a "legitimate, non-discriminatory reason" for its failure to re-hire Plaintiff – she never applied for her former teaching position.[3] (Def. Mem. at 11, 13.) Unfortunately for School City, this reason is insufficient to save its summary judgment motion. Plaintiff has "produce[d] evidence from which a rational fact-finder could infer that [School City's] proffered reasons were pretextual." *Senner v. Northcentral Tech. College*, 113 F.3d 750, 755 (7th Cir. 1997). As previously held, there is a dispute of material fact regarding whether Plaintiff applied for a special education teaching position at Field School for the 2003-2004 school year. Because the Court cannot determine whether the reason provided by School City is pretextual, Plaintiff's claims survive summary judgment.

---

[3] Defendants include financial considerations also as a legitimate reason. (Def. Mem. at 9-10.) But this is raised in the context of the RIF and thus is not applicable to the "failure-to-hire" analysis.

### III.  CONCLUSION

Because there are material issues of fact in dispute, the Court **DENIES** Defendant School City's Motion for Summary Judgment [DE 22].  The Court also **DENIES** Defendant's Motion to Strike Plaintiff's Response [DE 34].  The Court **RE-AFFIRMS** the final pre-trial conference date set for January 10, 2007, and the trial date set for January 29, 2007.

**SO ORDERED.**

ENTERED: December 19, 2006

> s/ Philip P. Simon
> PHILIP P. SIMON, JUDGE
> UNITED STATES DISTRICT COURT